779 So.2d 323 (1999)
Cheryl PASSMAN, Appellant,
v.
STATE FARM FIRE AND CASUALTY COMPANY, Appellee.
No. 98-01208.
District Court of Appeal of Florida, Second District.
September 17, 1999.
Douglas L. Grose of Douglas L. Grose, P.A., Tampa, for Appellant.
Charles W. Hall of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., St. Petersburg, for Appellee.
NORTHCUTT, Judge.
Cheryl Passman disputes a summary final judgment determining that the statute of limitations barred her breach of contract action against her homeowner's insurance carrier, State Farm Fire and Casualty Company. We reverse.
*324 The litigation stemmed from the structural collapse of Ms. Passman's home. Ms. Passman and her then-husband, Christopher Passman, took up residence in the home after it was built in 1986. In deposition testimony Mr. Passman recounted that he noticed cracks in the exterior west wall of the home shortly after the couple moved into it. In the ensuing months the home's builder and Mr. Passman patched the cracks several times, but they reappeared. Sometime in 1989 Mr. Passman installed a grade beam beneath the foundation along the west wall. He saw no more cracking after that. He believed the grade beam had solved the problem, which he attributed to settlement. Apparently the Passmans thereafter experienced marital difficulties, and Mr. Passman departed and returned to the home on more than one occasion. The couple divorced in 1993, and Ms. Passman became the sole owner of the home.
According to Ms. Passman's deposition and her affidavit in opposition to State Farm's motion for summary judgment, in December 1990 she noticed a hairline crack in the master bedroom. She contacted her State Farm insurance agent, Joe Ricci, to inquire whether there was coverage under her homeowner's policy. Ricci told Ms. Passman that he would handle this matter for her and arranged for an inspection and analysis. State Farm hired George Sinn, a geotechnical engineer with Central Florida Testing Laboratories, to determine if there was a sinkhole on the property. Sinn concluded that the cracks were caused by settlement due to the consolidation of debris buried beneath the foundation of the house. On January 23, 1991, State Farm sent the engineer's report to Ms. Passman along with a letter denying coverage. The letter quoted policy language excluding coverage for a loss either consisting of or caused by "settling, cracking, shrinking, bulging or expansion of pavement, patios, foundations, walls, floors, roofs or ceilings[.]"
In the proceedings below Ms. Passman averred that when she received the report she contacted Ricci to ask what it meant. Ricci told her that the house was undergoing normal settlement common to most houses in Florida, and that it was not a cause for further worry. Ms. Passman testified that she relied on Ricci's statement, accepting State Farm's representation that normal settlement was not covered and that these cracks were the result of normal settlement.
Thereafter the situation seemed to stabilize, and no noticeable changes occurred in the home for several years. Then, in April 1995 a substantial crack suddenly opened in the ceramic tile floor of the master bedroom, running across the entire length of the bedroom and the adjacent bathroom. Ms. Passman immediately contacted State Farm to describe this new development and to inquire whether this still would be considered normal settlement. Central Florida Testing Laboratories again examined the site and concluded that the settlement was caused by the consolidation of buried debris beneath the foundation. On June 1, 1995, State Farm wrote to Ms. Passman's attorney, reported the engineers' findings, and declined coverage. In addition to the policy exclusion cited in State Farm's January 1991 letter, this letter also relied on policy language excluding coverage for losses due to earth movement.
The house began to undergo structural changes: walls bulged, windows fell out, joints opened, large parts of the walls separated, the house separated from the foundation, the floors separated from the rest of the residence, and the entire structure warped. Basically, the house became a total loss. Repair estimates totaled about $60,000.
During this period Ms. Passman employed a public adjuster, who asserted that the house had collapsed within the meaning of the policy's collapse coverage. That portion of the policy insures

*325 for direct physical loss to covered property involving collapse of a building or any part of a building caused by one or more of the following:
. . .
b. hidden decay;
. . .
Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the loss is a direct result of the collapse of a building.
Collapse does not include settling, cracking, shrinking, bulging or expansion.
. . .
The policy does not define "collapse." This court previously has held that collapse coverage applies when a building has suffered material or substantial impairment of its basic structure. See Auto Owners Ins. Co. v. Allen, 362 So.2d 176 (Fla. 2d DCA 1978).
On June 6, 1996, State Farm again wrote to Ms. Passman's attorney, rejecting the claim under the collapse coverage. In November 1996 Ms. Passman moved out of the house because she felt that it was unsafe.
Ms. Passman filed suit on November 14, 1996, alleging State Farm's breach of the insurance contract. State Farm answered and asserted several affirmative defenses, including a statute of limitations bar. In due course, State Farm filed a motion for summary judgment grounded on the statute of limitations and policy exclusions.
To oppose State Farm's motion for summary judgment, Ms. Passman engaged a geologist to give an expert opinion. He ultimately concluded that the structure had collapsed because hidden debris buried beneath the foundation had decayed.
The circuit court ruled that the statute of limitations barred Ms. Passman's suit. The court found that the five-year limitations period began on January 23, 1991, when State Farm denied the original claim. The court observed that by then Ms. Passman either knew or should have known of the serious sub-slab or foundation problems. The court granted State Farm's motion and rendered a final judgment dismissing Ms. Passman's suit.
We reverse because Ms. Passman's alleged knowledge of the condition was not the event which commenced the limitations period on her breach of contract action. Rather, the limitations period began when Ms. Passman's cause of action accrued, i.e., when State Farm allegedly breached its obligation to pay her claim. See State Farm Mutual Automobile Ins. Co. v. Lee, 678 So.2d 818 (Fla. 1996). Therefore, State Farm's statute of limitations defense turns on a determination whether the claim Ms. Passman sued on in November 1996 was the same claim that State Farm denied in January 1991. See Roth v. State Farm Mut. Auto. Ins. Co., 581 So.2d 981 (Fla. 2d DCA 1991) (holding that plaintiff cannot extend statute of limitations by resubmitting the same insurance claim).
We conclude that the two claims were different. To be sure, as the circuit court pointed out, in each instance the underlying cause of the loss was the same. But the January 1991 claim involved only settlement cracks, a loss which clearly was not covered under the policy. The second claim, filed in April 1995 and finally denied in June 1996, involved the collapse of Ms. Passman's home, a loss which arguably was covered under the policy and which had not occurred at the time of the first claim. Ms. Passman's lawsuit alleged that State Farm breached its obligation to pay by denying her claim under the collapse coverage. She filed her suit well within the five-year limitations period following that denial.
The circuit court rejected Ms. Passman's argument along these lines, reasoning that the policy would not cover a *326 collapse brought about by her own inaction and inattention to the known problem. Certainly, Ms. Passman's knowledge of the condition and her failure to take reasonable steps to remedy it before it ultimately destroyed her home might well be relevant to a policy defense, but it had no bearing on the statute of limitations defense. Moreover, there was an issue of fact in that regard; Ms. Passman maintained that she did not appreciate the true nature or seriousness of the condition because she was misled by the State Farm agent's mistaken characterization of it in January 1991. On State Farm's motion for summary judgment, the court was precluded from resolving this fact question against Ms. Passman. See Hervey v. Alfonso, 650 So.2d 644 (Fla. 2d DCA 1995).
For the reasons described, we reverse the summary final judgment and remand for further proceedings.
Reversed and remanded.
PATTERSON, C.J., and BLUE, J., Concur.